IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. AP-75,933






EX PARTE FRANK GARCIA HERNANDEZ, JR., Applicant









ON APPLICATION FOR A WRIT OF HABEAS CORPUS

IN CAUSE NO. 22048-02-A IN THE 47TH DISTRICT COURT

 POTTER COUNTY





 Johnson, J., filed a dissenting opinion in which Price, J., joined.



D I S S E N T I N G O P I N I O N



 The bone of contention in this case is the meaning of "is serving a sentence for." (1) The
majority holds that the phrase includes the sentence for a new conviction that occurred after release
on parole or mandatory supervision and before revocation of that release. Indeed, the offense on
which the new conviction is based is frequently the reason for the revocation. I would hold that the
phrase refers only to the sentence on which the applicant is seeking street-time credit.

 In 2005, we decided Ex parte Keller, 173 S.W.3d 492 (Tex. Crim. App. 2005). In that case,
Keller sought street-time credit on a 1992 burglary conviction. In 1993, while on parole on that
sentence, he committed indecency with a child, but he was not convicted of that offense until 1997. 
His sentence of two years' imprisonment on that charge had already been fully served at the time of
sentencing. We held that, when Keller's release on the burglary charge was revoked in 2004, "he
was not serving a sentence for" one of the offenses listed in Tex. Gov't Code § 508.149(a)-the
sentence for the listed offense was fully discharged-and that the offense that was listed, indecency
with a child, was not a "previous" one, as it had been committed after the date of the burglary
sentencing. (2)

 According to our holding in Boykin v, State, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991), 

When we interpret statutes . . ., we seek to effectuate the "collective" intent or
purpose of the legislators who enacted the legislation. Camacho v. State, 765 S.W.2d
431 (Tex.Cr.App 1989). . . .


When attempting to discern this collective legislative intent or purpose, we
necessarily focus our attention on the literal text of the statute in question and attempt
to discern the fair, objective meaning of that text at the time of its enactment. . . .
There really is no other certain method for determining the collective legislative
intent or purpose at some point in the past, even assuming a single intent or purpose
was dominant at the time of enactment. . . .


Thus, if the meaning of the statutory text, when read using the established canons of
construction relating to such text, should have been plain to the legislators who voted
on it, we ordinarily give effect to that plain meaning. Smith v. State, 789 S.W.2d 590,
592 (Tex.Cr.App. 1990). "Where the statute is clear and unambiguous, the
Legislature must be understood to mean what it has expressed, and it is not for the
courts to add or subtract from such a statute." Coit v. State, 808 S.W.2d 473, 475
(Tex.Cr.App. 1991)(quoting Ex parte Davis, 412 S.W.2d 46, 52 (Tex.Cr.App.
1967)).


There is, of course, a legitimate exception to this plain meaning rule: "where
application of a statute's plain language would lead to absurd consequences that the
Legislature could not possibly have intended, we should not apply the language
literally." Faulk v. State, 608 S.W.2d 625, 630 (Tex.Cr.App. 1980). When used in the
proper manner, this narrow exception to the plain meaning rule does not intrude on
the lawmaking powers of the legislative branch, but rather demonstrates respect for
that branch, which we assume would not act in an absurd way.


Id. We noted in a footnote that "the canons of construction are no more than rules of logic for the
interpretation of texts." Id. at n.3.

 The statute disallows street-time credit "if the inmate is serving a sentence for or has been
previously convicted of" one of the offenses listed in section 508.149. Clearly, the legislature
desired to award non-custodial time credit only to parolees who, when released on mandatory
supervision, have convictions for only non-violent offenses. In this context, "has been previously
convicted of" is clear and unambiguous: at some time before the inmate committed the offense for
which he is currently incarcerated, he was convicted of one of the listed offenses. On the other
hand, "is serving a sentence for" is susceptible to at least two interpretations, and it seems to me to
apply only to the sentence on which the inmate is seeking street-time credit. To interpret it otherwise
allows, even encourages, the Board of Pardons and Paroles (the Board) to engage in inappropriate
gamesmanship-delay revocation of supervision for a unlisted offense that meets the midpoint
requirement of § 508.283(c) until there is a new conviction on a listed offense, then deny street-time
credit because the inmate "is serving a sentence for" a listed offense.

In Morrissey v. Brewer, 408 U.S. 471, 475 (1972), the Supreme Court held that due
process requires that a preliminary hearing be held "as promptly as convenient" after
a parolee has been arrested to "determine whether there is probable cause or
reasonable ground to believe that the arrested parolee has committed the acts that
would constitute a violation of parole conditions."


Ex parte Cordova, 235 S.W.2d 735, 735 (Tex. Crim. App. 2007). 

 

 Tex. Gov't Code § 508.281(a) states that 


[a] releasee . . . is entitled to a hearing before a parole panel . . . within a period that
permits a parole panel . . . to dispose of the charges withe the periods established by
Sections 508.282(a) and (b) if the releasee . . . (1) is accused of a violation of the
releasee's parole or mandatory supervision . . . on information and complaint by a
peace officer or parole officer.


 Tex. Gov't Code § 508.2811, states that


[a] parole panel . . . shall provide within a reasonable time to an inmate or person
described by Section 508.281(a) a preliminary hearing to determine whether probable
cause or reasonable grounds exist to believe that the inmate or person has committed
an act that would constitute a violation of a condition of release, unless the inmate
or person: 

 (1) waives the preliminary hearing; or 

 (2) after release:

 (A) has been charged only with an administrative violation of a condition
of release; or 

 (B) has been adjudicated guilty of or has pleaded guilty or nolo contendere
to an offense committed after release, other than an offense punishable by
fine only involving the operation of a motor vehicle, regardless of whether
the court has deferred disposition of the case, imposed a sentence in the case,
or placed the inmate or person on community supervision. 


 In this case, applicant was not "a person described by Section 508.149(a)" when he was released
on mandatory supervision for unauthorized use of a motor vehicle. He served three years, ten and one-half months, then was released on mandatory supervision. Seventeen years and six months later, he was
arrested for robbery, a listed offense. In August 2004, when appellant was arrested on the revocation
warrant that alleged commission of the robbery, he was still not "a person described by Section
508.149," although charged with a listed offense. If the Board had acted on that revocation motion by
holding a hearing "as promptly as convenient" or even within 120 days, applicant would still not have
been "a person described by Section 508.149(a)" and would have received street-time credit. The
Board, however, waited almost 150 days-until the new charge had resulted in a conviction for a listed
offense and a new sentence of five years-then revoked applicant and denied him street-time credit on
the revoked mandatory supervision on the basis that he was, at the time of revocation, "a person
described by Section 508.149(a)," an inmate who "is serving a sentence for" a listed offense. 

 This strikes me as gamesmanship, and perhaps, a violation of the spirit of § 508.283, in which
the calculation of the time remaining on the sentence in which street-time credit is sought is based on
the date on which the revocation warrant was issued, not when the alleged violation is found to be true. 
In this case, the Board's position-that "eligibility for street-time credit should depend strictly upon
whether the person is one 'described by Section 508.149(a)' at the time they are revoked," (3) rather than
on the inmate's status on the date on which the revocation warrant issued-also has a financial impact
on the state. If applicant had been granted the street-time that I interpret the statute to grant, the 1983
sentence would have been discharged in 2008, and when the sentence for the robbery discharges in
August 2009, he would be released. Instead, when the robbery sentence expires, applicant will be
confined, at public expense, for an additional 16 years, on an unlisted offense.

 I would interpret the statute as directing us to look to only the sentence on which time credit is
sought and ask if that sentence is for a listed offense or if the inmate has a conviction for a listed offense
that predates the sentence on which street-time credit is sought. If the answer to each inquiry is no, then
the inmate is not a person who is "serving as sentence for or has been previously convicted of" a listed
offense nor "a person described by Section 508.149(a)," thus § 508.283(c) applies. Because the Court
does not interpret the statute in that way, I respectfully dissent.


Filed: January 28, 2009

Publish
1. There is no dispute that the ineligible offense is not a "previous conviction."
2. In a 2007 per curiam order, Ex parte Foster, WR-36,343-02 & -03 (Tex. Crim. App. May 9, 2007)(per
curiam)(not designated for publication), the Court considered a case very similar to the instant case and reached the
same conclusion, but this Court has stated many times that unpublished cases, such as Ex parte Foster, lack
precedential value and thus it cannot be relied upon as the basis for today's ruling. See, e.g. Holmes v. State, 248
S.W.3d 194 (Tex. Crim. App. 2008); Ex parte Hood, 211 S.W.3d 767 (Tex. Crim. App. 2007). 


3. Ex parte Keller, 173 S.W.3d 492, 497 (Tex. Crim. App. 2005).